IN THE MATTER OF LEWIS C. STANLEY, AN
ATTORNEY AT LAW.

May 6, 1986.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that LEWIS C. STANLEY of ROCKY HILL, who was admitted to the Bar of this State in 1954, be publicly reprimanded for engaging in undignified or discourteous conduct degrading to a tribunal, *DR* 7–106(C)(6), said conduct being prejudicial to the administration of justice, *DR* 1–102(A)(5) and in violation of disciplinary rule, *DR* 1–102(A)(1), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said LEWIS C. STANLEY as an attorney at law of the State of New Jersey; and it is further

ORDERED that LEWIS C. STANLEY reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board.*

This matter is before the Board based upon a presentment filed by the District VII (Mercer County) Ethics Committee recommending that respondent be publicly disciplined. The Board makes the following findings of fact:

Respondent, an attorney with the State Office of Legal Services, represented Julius M. Sabo in a matrimonial action. On June 22, 1981 a plenary hearing was conducted to determine such issues as visitation and support. At the outset, respondent was admonished for interrupting the court. At one point during the legal argument respondent accused his adversary of "playing games," prompting the court to caution respondent not to couch his argument in those terms. The court said it found respondent's language very difficult. Respondent replied that the case was very difficult as was the court's attitude because it had permitted contempt of its order for a year and a half. The court replied

Mr. Stanley, I don't think I can tolerate your conduct any more. I'm not going to permit you with the trial of this case [sic]. I'll contact your office and ask somebody else to come down here to try this case [1T23-9 to 14].[1]

When respondent replied that no one else was available, the court stated that respondent was "obfuscating the issues of the case" by his conduct. Later in the hearing, the court told

---

[1] 1T refers to the plenary hearing transcript of June 22, 1981.

respondent: "Stop shouting. Keep your voice down" [1T43-24 to 25].

After the luncheon recess, the court told respondent that his conduct had been unsatisfactory because it interfered with the orderly consideration of evidence in the case. When respondent refused to follow the court's instruction concerning the interrogation of a witness, the court terminated the hearing, stating it could "no longer ... tolerate [respondent's] behavior in this court" [1T58-3 to 7]. The court noted that respondent had refused to follow its directions and rulings and that respondent's conduct was discourteous.

The matrimonial motions were transferred to another court and a plenary hearing was held on July 21, 1981. Respondent here took exception to the court's comment that respondent had a "great ability to twist words." This produced the following colloquy between respondent and the court:

THE COURT: Please don't point your finger at the Court.

MR. STANLEY: I am not pointing a finger at you, your Honor.

THE COURT: Mr. Stanley, don't interrupt the Court when the Court is speaking. Your behavior is abominable really. I don't understand why you have to act that way.

MR. STANLEY: Are you prejudiced against me?

THE COURT: Of course not, Mr. Stanley, but there is no need for histrionics. Now you are at the point where you say you were criticized before, for raising your voice in the Court and you walk back and forth and try to look at the Court with great piercing eyes as if you were some superior type person. You are not. [2T56-16 to 2T57-16].[2]

After being cautioned a number of times about interrupting the court, respondent stated that he would ask the court if it were finished before he spoke, contending that he had not consciously interrupted the court. The court stated:

The Court will note for the record that you have once again made a direction to the Court by pointing your finger and shaking your finger at the Court, squeezing up your face and making a demand that the Court now finds contumacious. I will deal with that at the end of the trial as to your total behaviour [sic] throughout the trial. There is no reason this Court can

[2]2T refers to the plenary hearing transcript of July 21, 1981.

ascertain, why you, over all of the attorneys that appear here day in and day out are unable to ascertain when the Court has finished speaking [2T81–20 to T82–6].

During cross examination of a witness, the court noted that respondent laughed. Respondent replied that he did so because the court was permitting certain questions by his adversary. Later in the hearing, defense counsel objected to a question respondent asked the witness as having previously been ruled against by the court. Agreeing with the statement, the court said:

... Mr. Stanley's laughter is ill founded since he has been held in contempt. I explained to you this morning that I found your behavior contumacious. I will deal with it at the end of the hearing. I assume you want to continue displaying this behavior. You may do so at your peril.

MR. STANLEY: I am going to ask a question. Is my client going to get a fair and unbiased hearing?

THE COURT: He is.

MR. STANLEY: You are going to rule in accordance with the law?

THE COURT: I will.

Now, Mr. Stanley, I find those two questions highly improper because during the course of the entire morning I have asked you time and time again not to interrogate the Court, not to ask the Court questions. If, at the end of a proceeding, an attorney representing a client feels that his client was not afforded a fair trial or he feels the ruling was not in accordance with the law, he has the ability to appeal to a higher court to establish that. That is why there is a court reporter here, to make a record of everything that is said, but your continuing action not in proceeding with this matter in the Court, but in intermediate affairs, arguing with the Court, interrupting the Court, asking the Court questions, directing the Court, shaking your finger at the Court, staring at the Court for undue periods of time, I find highly offensive and I would like you to continue with the hearing.

I was required at the time I did so, to cut short your direct examination because of your continued bad behavior in the face of the Court [2T124–15 to 2T126–3].

The court noted later that respondent was "directing one of those withering stares" at the court. When respondent questioned if his stare was contumacious, the court replied that it was, as was his laughter. Respondent was later admonished by the court for throwing his pencil on the counsel table.

When the hearing continued the following day, respondent took exception to a remark made by the court, stating

> For the record, I take advantage of anything is an improper remark. The highest proof known to the law is the admission that comes from an adversarial party. It is not taking advantage of anybody to attempt to elicit the truth and the strongest type of proof known to the law. This is just one more instance of the gratuitous and unnecessary remarks of the temporary occupant of an honored place in our Court System, and furthermore, I serve notice upon you, sir, that there is no reason for me to tolerate it. Whether your conduct and whether your gratuitous statements are justified is something that I will leave to the Committee on Judicial Ethics [3T7–20 to 3T8–9].[3]

The court later noted for the record that respondent displayed to witnesses and the court a "vituperative attitude." It further noted that Respondent constantly remained silent and stared at the court in a rude and insolent manner. Respondent replied that he made no gestures, no facial expressions and was speaking very quietly and calmly. Defense counsel later objected to the tone of Respondent's voice in questioning a witness. The court agreed. Respondent replied

> I object to the characterization. It is one more indication of improper use of terms by this Court. My tone is not vituperative. My tone is vigorous as it has a right to be. I have the duty of bringing out the truth and I will bring it out. [3T34–7 to 12].

After three times telling respondent to question his client about his expenses instead of having the witness reaffirm a certification, the court stated that this was another example of the contempt respondent displayed to the court.

When the court later overruled respondent's objection, respondent laughed out loud. Respondent later instructed his client, who was being cross-examined by defense counsel, to "try in the welter of confusion to answer his questions to the best of your ability." The court informed respondent that there was no need for respondent to instruct his client during cross-examination but respondent insisted that it was entirely proper [4T55–20 to 4T56–11].[4]

---

[3] 3T refers to the preliminary hearing transcripts of July 22, 1981.

[4] 4T refers to the preliminary hearing transcripts of July 23, 1981.

On July 24, 1981 respondent made an emergent court application so the children of his client could visit their hospitalized grandfather. Although the parties had been instructed that the hearing would not continue until two p.m. respondent told his client to be in court when he made the application thus permitting his client to see his children in the hallway between the judge's chambers and the courtroom. Mr. Sabo kept attempting to contact the children and was only dissuaded when the sergeant-at-arms threatened to have him arrested if he did not leave the children alone. During respondent's lengthy summation, respondent noted that the court was smiling which prompted the court to say:

> Yes, I'm at a point of amusement when you make that rude, ugly stare at the Court with complete silence for several seconds, and that's why I smile and act—
>
> MR. STANLEY: My stare is rude? To stare is rude?
>
> THE COURT: That's an act for which I cited you already as a contemptuous act, and we will deal with that at the end of this trial.
>
> MR. STANLEY: That's something new, a stare is rude [5T77–16 to 5T78–5].[5]

At the conclusion of his summation, respondent apologized to the court, stating

> [a]nd I apologize for any offense that you may have taken from any untoward gesturous [sic] stare of mine. I have no reason to want to offend you. It is full hearty [sic] and stupid. I think that your Honor, as relatively new judge, may be overly sensitive, and I said to myself on this first occasion, very first day, I've taken this case too much to heart. [5T88–1 to 10].

After ruling on the matrimonial motions the court excused all parties except respondent, informing respondent that he had been cited for contempt pursuant to R. 1:10–1. The charges in summary were:

1. Constant interruption of the court when court was speaking.
2. Displayed flippant, insulting attitude by asking court if the court was finished speaking.
3. Displayed arrogance toward the court by stopping oral presentation, glaring at court with a rude grimace. This was done repeatedly in spite of court admotions to cease.

---

[5] 5T refers to preliminary transcript of July 24, 1981.

4. Displayed a constant failure to respond to court's directions by frequently making discourses rather than asking questions of witnesses.

5. By displaying an insulting and rude manner in addressing the court by either laughing out loud or making such remarks as "Oh, Boy," under his breath while expressing displeasure with court's ruling.

6. Although instructed by the court not to present affidavit as evidence of his financial circumstances, but to question the client, Respondent defied the court's instruction.

7. Instructed his client on how to respond while being examined by defense counsel after the court directed Respondent not to do so.

The court stated it considered these actions to violate *DR* 7–106(C)(1) by continuing his discourse with his offers of proof when directed to the court to question the witnesses; *DR* 7–106(C)(2) by asking questions that were intended to degrade a witness or other person; *DR* 7–106(C)(4) by asserting personal opinion as to the justice of a cause; *DR* 7–106(C)(6) by behaving in an undignified or discourteous manner which was degrading to a tribunal. The court further found that respondent violated *DR* 7–101(A) by not acting in the best interest of his client.

In his defense, respondent said he had no motivation to be contemptuous. Respondent insisted he had merely been vigorous in pursuing the interests of his client. Respondent maintained that his apologies to the court were sincere. The court replied:

> The Court considers and appreciates your offer of apology but I find it impossible to be sincere. There is not a person who sat in this courtroom on this side and saw you perform here in the past four days that I would think would have any respect for me if I said I believed that apology. Although you say you never intended to be contemptuous of the Court, there is no other conclusion that I can draw; that this Court can draw. There are many expressions of duty of an attorney throughout the jurisprudence. I believe there is no doubt that there was a willfulness to your conduct; that your conduct expressed an indifference to the Court command throughout, and what we have just witnessed is an absolutely perfect, excellent example of the old adage: "The best defense is a good offense.

> I applaud you on your theatrics, today.

> MR. STANLEY: Your Honor, please I resent that remark. They're not theatrics.

> Well, what can I do. I can't do anything about it.

THE COURT: Your response is absolutely amazing in light of the conduct that was exhibited throughout the trial [6T22–19 to 6T24–1].[6]

The court told respondent that his conduct made the court's duties exceedingly difficult. It concluded that the contempt charges had been proven. The court told respondent it would file a report with the Ethics Committee and with Respondent's employer, the Commissioner of the Department of Community Affairs. A sanction of $500 was imposed which respondent was to pay to his adversary as counsel fees.

In a *de novo* review of the record the Appellate Division affirmed the contempt citation. The court in an unpublished opinion dated June 6, 1983 noted that respondent was convicted of seven acts of contempt and that

... [t]hese acts are not seven isolated or individual incidents; they reflect a contumacious pattern of disrespect and disruptive conduct during much of the four day custody hearing. We conclude there is no reason to disturb the judge's finding that Stanley's behavior was disrespectful and contumacious and that he acted willfully. The record demonstrates that appellant persisted in his actions even after he was warned to desist by the trial judge [Appellate Division decision at 3–4].

On February 14, 1983 respondent appeared before another court in connection with his motion for recusal of the judge from presiding over a hearing involving a civil action in which respondent, along with others, was named defendant. At this hearing, respondent indicated that he was ill. Dissatisfied with the court's statement that there were factual issues involved in a summary judgment motion, also pending, respondent stated

Judge, if you thought a little bit in your grimace, you would know that what you're saying is utter nonsense. Why?

THE COURT: Mr. Stanley—

MR. STANLEY: Why—

THE COURT: I will ask you one thing, you may not particularly care for the arguments I use, but I will still ask that in the way you characterize them, remember you're speaking to the Court, and—

MR. STANLEY: The Court is entitled to candor.

---

[6]6T refers to the contempt hearing of July 24, 1981.

THE COURT: It also is entitled, Mr. Stanley, to your respect, and your thinking your words over before they're used [7T12–10 to 24] [7]

Respondent replied that he was not being disrespectful of the court but was being candid. However, respondent then repeated that what the court had said "has got to be nonsense" and proceeded with his argument. Later during the colloquy, respondent stated that he could not believe what he was hearing, "the games that you are attempting to play with me." Respondent later apologized to the court for interrupting, stating that he was "most upset." However, he continued to press his demand for reasons from the court for its position.

At the District Ethics Committee hearing, the judge testified regarding respondent's conduct at the February hearing. He stated that respondent had an unusual emotive style, would constantly interject himself into the proceedings even when he was technically not the one who should be speaking, spoke in a loud voice and made dramatic physical gestures. The judge added that he was not saying that respondent's conduct constituted an obstruction of justice but it did extend the hearing two to three times longer than it should have been. The judge did not hold respondent in contempt but had spoken to him on the record about his conduct. The judge believed that respondent's conduct was discourteous, and at times undignified. In a statement to the committee, respondent explained that his comment that the court was "playing games" was in the context of the court taking contradictory positions, ignoring admitted facts, and refusing to consider the applicable case law. Respondent said that the court understood the way this phrase was used.

On February 27, 1984 a two-count ethics complaint was filed. These charges encompassed the two plenary hearings enumerated above. In his answer, respondent raised as a separate defense his First Amendment rights. The ethics committee concluded that respondent was guilty of unethical conduct as

---

[7] 7T refers to the motion transcript of February 14, 1983.

alleged in the complaint. They recommended that respondent be publicly disciplined.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the ethics committee in finding unethical conduct on the part of respondent are supported by clear and convincing evidence.

A *de novo* review of the record clearly establishes that respondent engaged in undignified or discourteous conduct degrading to a tribunal *DR* 7–106(C)(6). This was prejudicial to the administration of justice, *DR* 1–102(A)(5) and violated a disciplinary rule, *DR* 1–102(A)(1). Respondent exceeded his duty to protect his client.

Courtroom courtesy
... is not for the sake of the presiding judge but for the sake of the office he or she holds. Respect for and confidence in the judicial office are essential to the maintenance of any orderly system of justice. This is not to suggest that a lawyer should be other than vigorous, even persistent, in the presentation of a case; nor is it to overlook the reciprocal responsibility of courtesy and respect that the judge owes to the lawyer. Unless these respective obligations are scrupulously honored, a trial court will be inhibited in performing two essential tasks: sifting through conflicting versions of the facts to discover where the truth lies, and applying the correct legal principles to the facts as found. Under the best of circumstances these tasks are difficult; without an orderly environment they can be rendered impossible. [*In re Vincenti,* 92 *N.J.* 591, 603–604 (1983)].

Respondent's conduct before the court cannot be excused. His language, constant interruptions, arrogance, retorts to rulings displayed a contumacious lack of respect. It is no excuse that the trial judge may have been in error in his rulings. See *In re Contempt of Carton* 48 *N.J.* 9, 16 (1966).

The Board is mindful that the purpose of attorney discipline is to protect the public from the attorney who does not meet the standards of responsibility of every member of the profession. *Matter of Templeton,* 99 *N.J.* 365, 374 (1985); *In re Goldstaub,* 90 *N.J.* 1, 5 (1982). The quantum of discipline must accord with

the seriousness of the misconduct in light of all relevant circumstances. *In re Nigohosian,* 88 *N.J.* 308, 315 (1982).

Respondent has been a member of the bar since 1954. He has no prior disciplinary history. Respondent, 67 years old, is retired from the practice of law. He has been a staff attorney with the State Office of Legal Services and left that position in either 1981 or 1982. There was no injury to a client or party as a result of respondent's misconduct. Respondent apologized to the court which did not accept it.

Respondent's court demeanor was not an isolated incident. The record consists of hearings before three courts. In each respondent was disrespectful. Respondent's conduct, because of his age and experience, cannot be condoned.

An eight-member majority of the Board recommends that respondent be publicly reprimanded. One member did not participate.

The Board further recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.