In re Petition for Disciplinary Action against James Malcolm WILLIAMS, Attorney at Law of the State of Minnesota.

No. C8–85–2307.

Supreme Court of Minnesota.

Oct. 23, 1987.

---

PER CURIAM.

The Director's petition for disciplinary action against respondent attorney James Malcolm Williams alleges three counts of professional misconduct: Count I, misbehavior occurring during the Sievert trial;[1] Count II, misconduct occurring during a pretrial deposition in the Sievert case; and Count III, disruptive conduct at a probable cause hearing before a panel of the Lawyers Professional Responsibility Board. The referee, the Honorable William A. Johnson, found respondent's conduct during the pretrial deposition merited a public reprimand and that respondent's misconduct on the other two occasions warranted 6–months' suspension. Respondent requested a copy of the transcript of the referee's hearing; consequently, the referee's findings are not conclusive under Rule 14(d). We conclude a public reprimand and 6 months' suspension are warranted.

A.

**Count I**

In the summer of 1982, respondent represented plaintiffs, Mr. and Mrs. Sievert, in a lawsuit against the First National Bank of Litchfield and attorney David Meyer, for losses incurred in a failed golf course venture. The referee found that respondent, throughout the 6–week–long trial and notwithstanding the admonitions of the trial judge, repeatedly asked improper questions that were either argumentative, irrelevant, or repetitive, or which assumed facts not in evidence nor reasonably likely to be put in evidence, or which were designed to degrade the witness.[2] The

Philip D. Nelson, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

James Malcolm Williams, Minneapolis, pro se.

1. The Sievert case is reported in *Sievert v. First National Bank in Lakefield,* 358 N.W.2d 409 (Minn.App.1984), *pet. for review denied* (Feb. 5, 1985).

2. The disciplinary rules found to have been violated were:
 Rule 3.5(h): "A lawyer shall not engage in conduct intended to disrupt a tribunal."

Rule 4.4: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, * * *."
 Rule 8.4: "It is professional misconduct for a lawyer to * * * (d) engage in conduct that is prejudicial to the administration of justice."

2,900–page trial transcript clearly and convincingly supports the referee's findings.

During respondent's cross-examination of witness David Meyer, respondent's questions were repeatedly argumentative[3] or without foundation,[4] or attempted to characterize unfairly the witness' testimony,[5] or were crude attempts to demean the witness.[6]

Respondent's cross-examination of witness Robert J. Sheran is another example. Mr. Sheran, a former chief justice of this court, testified as an expert for defendant Meyer on the standard of care required of an attorney. On cross-examination, respondent inquired about the real party in interest status of liability insurers in personal injury litigation where the insurer retains counsel to represent the insured. The referee thought the form of the questioning was improper but did not rise to the seriousness of a disciplinary violation. We disagree. Respondent was free to explore the arguably anomalous status of insurance defense counsel insofar as relevant, but what was abominable was respondent's converting this inquiry into a false personal attack on the witness.[7]

An argumentative question is improper and unfair because it argues the evidence rather than seeking to elicit evidence from the witness. Argument is reserved for counsel to make, not to the witness, but to the trier of fact after the facts are adduced. During the stress of a trial, for one reason or another, it may happen that argumentative questions will be asked, but the trial judge is ordinarily able to handle the situation by sustaining an objection, striking improper remarks, or cautioning the jurors.

But here respondent's questioning went far beyond what is excusable or tolerable. Almost every page of the transcript of respondent's cross-examination of Mr. Meyer shows improper questioning, which in turn led to inevitable objections by oppos-

---

3. For example,
"Q. [By Mr. Williams]. OK, so you know that he [Sievert] wasn't buying it to farm it?
"A. [Mr. Meyer]. I didn't mean to suggest that.
"Q. Well, you mean to suggest that you don't want to admit that you knew he was going to try to build a golf course?"
(T. 98).

4. For example, Mr. Meyer testified that between 1973 and 1975 the bank had paid his firm an annual retainer of $25 but that it was not his practice to send the bank a bill showing services to which the retainer was applied. Mr. Williams then asked: "Q. Well, you weren't receiving money under the table so you didn't have to report it to your partners, were you?" (T. 85).

5. Mr. Williams interrupted Mr. Meyer's appropriate answer to a question by stating: "Your Honor, I am objecting to the witness continuing to be a salesman on the stand." (T. 249). In response to other answers by Mr. Meyer, respondent commented that the witness was "editorializing" (T. 267), or his answer was "sales talk" (T. 258). At one point, after Mr. Meyer had answered the question and the court so ruled, respondent stated: "Your Honor, I don't wish to comment on his testimony because I don't want to get the Court's ire up anymore than we have already done in the past, but I do feel * * * the witness he has refused * * * he has refused to respond to simple direct questions with simple direct answers * * * and I would once again ask the Court to instruct the witness * * *." (T. 366). We might note, too, respondent would interrupt a responsive answer by Mr. Meyer and, when told to let the witness answer, would withdraw the question (T. 248). When, later, defense counsel sought to cross-examine Mr. Sievert, respondent would repeatedly interrupt with improper objections and remarks.

6. In cross-examining Mr. Meyer after his direct testimony, respondent elicited that Mr. Meyer had attended a religious college and received a degree in philosophy. He asked whether the witness had developed a "philosophy of your own that is different from the philosophy of ordinary Christian ethics," and, when Mr. Meyer answered he had not, then asked, "So you still consider yourself a Christian?" (T. 1984) and "Are there any circumstances under which you would lie, Mr. Meyer?" (T. 1986).

7. "Q. [Mr. Williams]. And yet you went through case after case for a number of years as a former FBI agent, *knowingly misrepresenting* to the juries time and time again that you were representing an individual when in truth in fact you were representing an insurance company?" (Emphasis added.)
"A. [Mr. Sheran]. That statement is false and scandalous."
(T. 2369). *See Sievert v. First National Bank in Lakefield,* 358 N.W.2d 409, 416 (Minn.App. 1984), for a further excerpt of the Sheran cross-examination.

ing counsel, conferences at the bench or in chambers, confusion, posturing before the jurors, and a record tainted with unfounded insinuations and innuendo. The trial judge exercised patience and fairness in an effort to keep the trial in hand, although several times he was close to granting a mistrial. Aware that the jury had heard his remarks even though the judge had sustained an objection or ordered the remarks stricken, respondent continued undeterred. Respondent, we conclude, engaged in calculated trial tactics to provoke and bait opposing counsel, intimidate and demean witnesses, and obfuscate the record. To corrupt the trial process in this manner is prejudicial to the administration of justice and is unprofessional conduct.

Respondent asserts he has a right, indeed an obligation, to represent his clients vigorously, aggressively, and zealously. To be vigorous, however, does not mean to be disruptively argumentative; to be aggressive is not a license to ignore the rules of evidence and decorum; and to be zealous is not to be uncivil.

Respondent argues his conduct was an exercise of free speech and to impose discipline would be unconstitutional censorship and would chill effective representation of clients. Respondent would misapply the first amendment. Outside the courtroom the lawyer may, as any other citizen, freely engage in the marketplace of ideas and say all sorts of things, including things that are disagreeable and obnoxious. *See, e.g., In re Justices of the Appellate Division,* 33 N.Y.2d 559, 301 N.E.2d 426, 347 N.Y.S.2d 441 (1973) (attorney not subject to discipline for an out-of-court statement); *Polk v. State Bar of Texas,* 374 F.Supp. 784 (N.D.Tex.1974) (a reprimand for statements made by an attorney outside his professional capacity would violate his first amendment rights). But here respondent was in

the courtroom, an officer of the court engaged in court business, and for his speech to be governed by appropriate rules of evidence, decorum, and professional conduct does not offend the first amendment. *See In re Getty,* 401 N.W.2d 668 (Minn. 1987) (attorney subject to discipline for rude, loud, and disrespectful conduct during court proceedings). Respondent cites *In re Snyder,* 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985), where the Supreme Court held that an attorney's criticizing the administration of the Criminal Justice Act did not warrant discipline. The Court did not, however, decide the case on constitutional grounds but simply held that the attorney's conduct was not "inimical to the administration of justice." *Id.* at 645, 105 S.Ct. at 2881. Indeed, the court went on to say, "The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice." *Id.* at 644–45, 105 S.Ct. at 2881.[8]

**Count II**

■ At the pretrial deposition of Howard Sievert, in August 1981, a dispute arose between counsel whether the witness could review a pleading while being asked questions about it. This then occurred:

Mr. Rosen: If you're going to hand the complaint to him to coach him we are going to see the Judge.

Mr. Williams: Just get your foul odious body on the other side.

Mr. Rosen: Then don't show the witness anymore—

Mr. Williams: I'm giving the witness the Complaint—

Mr. Rosen: You're not entitled to coach the witness any further, you're not entitled to—

Mr. Williams: Don't use your little sheeny Hebrew tricks on me, Rosen.

---

**8.** Any number of cases support restraints on in-court conduct of lawyers to preserve the administration of justice. *E.g., Matter of Stanley,* 102 N.J. 244, 507 A.2d 1168 (1986) (undignified and discourteous conduct degrading to the tribunal and prejudicial to the administration of justice warranted public reprimand); *In re Vincenti,* 92 N.J. 591, 458 A.2d 1268 (1983); *Cincinnati Bar Ass'n v. Gebhart,* 69 Ohio St.2d 287, 431

N.E.2d 1031 (1982) (attorney suspended for outrageous in-court conduct as well as reprehensible behavior toward witnesses and opposing counsel out-of-court). Respondent cites Robert C. Black, *Attorney Discipline for "Offensive Personality" in California,* 31 Hastings L.J. 1097 (1980), but we find nothing in that article to support respondent's position.

Mr. Rosen: Off the record—

Mr. Williams: No, on the record.

Mr. Rosen: You son of a bitch.

Mr. Cox: Let's call a recess.

Mr. Rosen: Tell the Judge I called him a rotten son of a bitch for calling me a sheeny Hebrew and I want to go see the Judge right now.

The referee found that respondent intentionally used a racial slur, thus violating DR7–106(C)(5) and (6) of the Code.[9] We agree. Indeed, the violation is so clear that, as the referee stated, "it needs no discussion." Respondent argues that imposition of discipline for this breach of professional conduct denies him the equal protection of the law because opposing counsel was not subjected to disciplinary action for his offensive comments toward respondent. This argument is without merit. Respondent overlooks the lack of provocation for his own remarks and the understandable provocation for opposing counsel's response.

**Count III**

On November 20, 1985, a hearing was held before a panel of the Lawyers Professional Responsibility Board to determine whether there was probable cause for disciplinary proceedings on respondent's conduct at the Sievert trial.

The referee found that respondent repeatedly engaged in obstreperous, disruptive and abusive conduct at the panel hearing. The referee found respondent's behavior to be "outrageous and inexcusable." As had the referee, we have read the transcript and listened to an audio tape of the hearing, and we conclude the referee's findings are amply supported by the evidence. To cite just one instance, after the chairman had told respondent to stop talking, he persisted in continually interrupting the chairman, finally accusing the chairman of lying when the chairman said respondent was argumentative and interrupting. After the panel found probable cause, re-

spondent stated that he considered the panel chairman, a lawyer, "a disgrace to our profession." One can only conclude respondent was intentionally seeking to disrupt the panel proceedings. His conduct violated Rule 3.5(h), Rule 4.4, and Rule 8.4(d) of the Minnesota Rules of Professional Conduct.

**B.**

Respondent's other defenses are without merit. The director's petition, referring to each place in the trial transcript where misconduct is claimed and citing the disciplinary rules alleged to be violated, set out the charges at the petition stage with sufficient specificity. *See In re N.P.*, 361 N.W. 2d 386 (Minn.1985), *reh'g denied, appeal dismissed*, 474 U.S. 976, 106 S.Ct. 375, 88 L.Ed.2d 330 (1985). Respondent was not denied a right to confront his "accusers" by not being allowed to question Judge Foley, who wrote the appellate opinion in *Sievert*, and Director Wernz, who filed the disciplinary petition. Neither had any first-hand knowledge of the alleged misconduct and there was no showing they had any information material to the charges. *See State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975) (rejecting a similar confrontation argument). Respondent was not denied counsel at the panel hearing. Finally, the claim that the disciplinary rules are constitutionally vague was rejected in *In re N.P., supra.*

The remaining question is what discipline to impose. In *In re Getty*, 401 N.W.2d 668 (Minn.1987), we publicly reprimanded an attorney for rude and disrespectful conduct in the courtroom. Respondent contends to impose any heavier sanction on him would be to create a higher standard of conduct for experienced trial practitioners such as himself and would be a denial of equal protection. The argument is without merit. All attorneys are held to the same standard of professional conduct but experience and maturity may be considered in mitigation

---

**9.** On April 9, 1982, the Director's office issued a private warning to respondent for his deposition conduct but respondent refused to accept it. The Director, citing a need to use his limited resources elsewhere, withdrew the warning. The incident was subsequently revived for inclusion with the Sievert trial charges. Respondent objects to the revival, but this is permitted under Minn.R.Prof.Resp. 19(b)(1).

of sanctions to be imposed on a particular attorney. In *Getty*, we noted that the attorney was relatively inexperienced and was contrite.

Respondent Williams, however, is an experienced practitioner. He was admitted to the bar in 1952 and has tried many cases. Between August 1981 and November 1985 in several different settings, respondent exhibited the misconduct here recounted, indicating his misbehavior cannot be explained by any momentary indiscretion. Except for some conduct at the panel hearing, he sees no reason to apologize and does not. He chooses to believe there is some conspiracy against him by the powers that be and prefers to find fault in others rather than himself.

 We adopt the referee's recommendation of a public reprimand for the racial slur. For the other misconduct, we impose the recommended 6 months' suspension. We do not think requiring respondent to take the professional responsibility examination for reinstatement would accomplish anything. It is enough for respondent to know that any repetition of his misconduct will not be tolerated.

IT IS, THEREFORE, ORDERED:

(1) Respondent James Malcolm Williams is hereby publicly reprimanded for unprofessional conduct occurring at the Sievert pretrial deposition;

(2) Respondent is suspended from the practice of law for 6 months, commencing 7 days from the date of this opinion. The requirements of Rule 18(e) for reinstatement are waived; and

(3) Respondent shall pay $750 costs.