IN THE MATTER OF KALMAN H. GEIST, AN
ATTORNEY AT LAW.

March 21, 1988.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that KALMAN H. GEIST, of PATERSON, who was admitted to the Bar of this State in 1966, be publicly reprimanded for trial conduct that resulted in his being held for contempt, which conduct the Disciplinary Review Board found to be in violation of DR 1–102(A)(4) and (5), and DR 7–106(C)(1), (6) and (7), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded;  and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said KALMAN H. GEIST as an attorney at law of the State of New Jersey;  and it is further

ORDERED that KALMAN H. GEIST reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board based on a presentment filed by the District XI (Passaic County) Ethics Committee.  The facts are as follows:

In March 1982, respondent represented a Paterson municipal court clerk, who had been charged with ten counts of official misconduct, ten counts of bribery and nine counts of extortion in connection with solicitation or acceptance of cash payments to fix ten drunk driving cases.  During his summation before the jury on March 10, 1982, defendant made several comments that subsequently became the basis for contempt charges.

While reviewing the testimony of one of the officers who had guarded the municipal court clerk's office after the paperwork

had been impounded, respondent suggested that another municipal court clerk, not his client, was responsible for the case fixing. He then suggested to the jury that the State had withheld evidence. After the State's objection, however, respondent acknowledged the State "didn't keep anythin [sic] from me that I know of, and I would be surprised if [it] did." (1T18–16 to 18).[1] Rather, respondent suggested it had been the investigating detective who had not been candid.

A second comment made by respondent during his summation was that he, as defense counsel, was responsible for introducing important transcripts of municipal court hearings into evidence.

> You are going to have this, all of this in evidence. Most of it because I moved it in evidence, because I wanted you to see it—[1T27–21 to 24].

At this point the assistant prosecutor objected, because the State had been precluded from moving the same transcripts into evidence by a ruling of the court at the conclusion of a pretrial hearing, during which defense counsel had sought the court to find all transcripts inadmissibile. Respondent continued:

> It has D numbers on the back.
> The Court: [Respondent].
> [Respondent]: It says defendant—
> The Court: [Respondent].
> [Assistant Prosecutor]: Judge—
> The Court: It is a matter of court procedure, and the Court made a certain ruling in the State's case that did not make the opportunity available for the Prosecutor to move them.
> [Respondent]: But I wanted you [the jury] to have them. [1T28–1 to 28–10].

In an effort to end the matter, the court told respondent to "comment on the evidence in the case and not comment on the Court's procedures." (1T28–11 to 13).

A series of comments made by respondent throughout his summation about the court's dismissal of two bribery counts at

---

[1] 1T denotes the transcript of the summation of respondent on March 10, 1982.

the conclusion of the State's case forms the basis for the third instance upon which contempt charges were based. The first time respondent commented on the dismissal of these counts was during his review of the testimony of the investigating detective. The detective had been the sole witness to appear before the grand jury, which had indicted his client for bribery. He then told the jury: "The Judge dismissed the count." (1T20-19 to 20). No objection was made, and respondent opined that the detective must have lied to the grand jury, because "there's not one scintilla of evidence before the jury[.] And the Judge, as a matter of law, says there is not even an issue here." (1T20-24 to 21-1). Since there were still no objections, respondent forged forward:

A witness can come in. He can be the biggest liar in the world.... But as long as he says something happened the Judge has no choice, he has to submit it to you for decision.

Two counts were dismissed. The Judge already told you about that. Two bribery counts—[1T21-2 to 10].

At this juncture the court itself interrupted.

No, [respondent]. The Court told the jury that the cases have been disposed of. And please do not make further comments to the jury as to why they were disposed of. They are matters of law and of no concern to the jury. [1T21-11 to 15].

Nonetheless, respondent returned to this theme only minutes later.

There's a count that is no longer for your consideration with regard to [one of the victims]. The count alleging a bribery was dismissed. But it existed. It was in the indictment. What did it say?

[Assistant Prosecutor]: Objection, Judge.

The Court: Sustained. Move on, please, [Respondent].

Despite the court's explicit direction, however, respondent simply continued on the same theme:

What did someone say to get my client indicted for bribing [a person] when you heard nothing from [that person] about any attempt at a bribe? Who testified? He didn't. I asked him. He never went to the Grand Jury. Who did? [The investigating detective]. ... What did somebody do up there and say up there to convince a Grand Jury that there should have been a count, which you are no longer asked to consider? [1T35-10 to 22].

Receiving no objection or interruption, respondent relentlessly pressed this point:

> But [the investigating detective] said something to the Grand Jury to convince the Grand Jury that [my client] tried to bribe [someone]. Why is it that it's not here for your consideration? [1T36–9 to 12].

At this point the assistant prosecutor interjected:

> [Assistant Prosecutor]: Judge, again—
> [Respondent]: Why is it he did not testify as to it?
> The Court: Sustained. [1T36–13 to 16].

The court then instructed the jury:

> Ladies and gentlemen, you will not speculate as to the reason why this Court has made certain legal decisions in this case. Your decision, ultimately, must be based on the evidence in the case and the law that I will give you at the end of the case. [1T36–17 to 22].

After a short exchange between counsel, the court again informed the jury:

> [Y]our decision in the case must be based upon the evidence presented and the law that I tell you applies to the case. And you will not speculate as to any reasons that this Court used for making legal decisions in the case. [1T37–10 to 14].

Addressing respondent, the court concluded: "You will please proceed, [respondent], to render argument as to the evidence in the case." (1T37–15 to 16).

Undaunted, respondent almost immediately returned to the same subject.

> Did he [an alleged victim] say my client asked for money for himself or put it in his pocket? No. But there was, at one time, a count of bribery in this case.
> [Assistant Prosecutor]: Objection.
> [Respondent]: And this man—
> The Court: Sustained.
> [Respondent]: And this man did not testify before the Grand Jury—
> The Court: [Respondent]—
> [Respondent]: It is relevant.
> The Court: Do you understand what I am saying?
> [Respondent]: Yes.
> The Court: Then please continue on with the evidence and not make any reference to dispositions that the Court has made.
> [Respondent]: I am not. I am not talking about your disposition. But I have the right to tell this jury that somebody went to the Grand Jury—
> The Court: [Respondent]—
> [Respondent]: And said something—

The Court: [Respondent], I am cutting you off right now, I am ruling you are not. [1T39-1 to 23].

Thereafter, respondent made no further references to the dismissed bribery counts.

Respondent's client was ultimately convicted of five counts of official misconduct; he was found not guilty on five bribery counts. Subsequently, the remainder of the counts were dismissed.

As a result of a subsequent order to show cause, respondent was held to be in contempt of court for his remarks concerned with:

1. The withholding of evidence by the State;
2. Misleading remarks concerned about the admission of transcripts into evidence;
3. Repeated references to the dismissal of two counts of the indictment despite the Court's admonitions not to comment on that matter.... [Order of Superior Court, Law Div., June 8, 1982].

The court ordered respondent to pay a $750 fine. The court then referred the matter to the ethics authorities.

Respondent appealed his conviction to the Appellate Division. On December 16, 1982, that court held that respondent "contemptuously disregarded the trial judge's admonition not to refer to certain counts as having been dismissed by the court" and that his "remarks concerning the introduction of certain transcripts were unfair and misleading, and intended to impede, obstruct or distort the administration of justice." *In re Contempt of Kalman Harris Geist, Esq.*, Docket No. A–4991–81Tl (App.Div. Dec. 16, 1982). However, that court concluded that the record was unclear concerning respondent's comments regarding allegedly withheld evidence and reversed respondent's contempt conviction therefor. The Appellate Division upheld the $750 fine.

At the subsequent hearing before the district ethics committee respondent claimed that his repeated references to the dismissed bribery counts were merely attempts to make the same argument in different ways, a maneuver often attempted

by seasoned trial attorneys. Moreover, he claims that once the court definitively ruled, "I am cutting you off right now," (1T39–22 to 23), he never again referred to them.

Additionally, respondent took the position that his reference to his introduction of certain transcripts into evidence was merely a suggestion to the jury that his client had nothing to hide. Respondent admitted he had originally objected to their admission "instinctively, on the theory that whatever the State wants to put in is probably prejudicial, let's keep it out and decide later on whether it helps us...." (2T26–14 to 17).[2] His subsequent decision during trial to move for the admission of some of the transcripts was a tactical decision. It was "no ploy on my part to suggest that the State had done something improperly." (2T29–17 to 18). He testified it was "an appropriate comment." (2T29–24).

The committee concluded respondent was guilty of unethical conduct with respect to the infractions affirmed by the Appellate Division. Accordingly, the committee found respondent had violated DR 1–102(A)(4) and (5) and DR 7–106(C)(1), (6) and (7).

## CONCLUSION AND RECOMMENDATION

Respondent was convicted of criminal contempt of court. His conviction was established beyond a reasonable doubt. *In re Contempt of Ungar*, 160 *N.J. Super.* 322, 332 (App.Div.1978). *See In re Buehrer*, 50 *N.J.* 501, 516 (1967). Accordingly, the Board is satisfied that the conclusion of the committee that respondent was guilty of unethical conduct is fully supported by clear and convincing evidence.

Respondent's conviction of criminal contempt establishes that he engaged in conduct that was degrading to a tribunal, that he alluded to a matter that could not be supported by admissible evidence, that he intentionally violated an established rule of

---

[2] 2T denotes the transcript of the hearing before the district ethics committee on April 27, 1983.

procedure and that his conduct involved misrepresentation that was prejudical to the administration of justice. He thereby violated *DR* 1–102(A)(4) and (5) and *DR* 7–106(C)(1), (6) and (7).

However, "[a]lthough contempt convictions are criminal in nature, [citation omitted], they cover a gamut of misdeeds embracing on the lower side conduct which 'should be equated with a petty offense....'" *In re Isserman,* 35 *N.J.* 198, 203 (1961) (quoting from *In re Mattera,* 34 *N.J.* 259, 272 (1961)). Hence, it is appropriate in cases such as this to consider the underlying facts of the conduct involved.

Respondent made several comments during his summation to the jury that constituted disobedience to the court and tended to impede the administration of justice. The first instance involved respondent's reference to his introduction of evidence, although he knew full well the State had not introduced that same evidence, because the court had precluded it from doing so. The second instance was respondent's repeated references to the dismissal of bribery counts, despite several interruptions by the court telling respondent to cease that line of argument, several sustained objections from the State and several admonitions by the court to the jury not to speculate on the reasons the court made certain rulings of law.

The Board agrees with the Appellate Division's finding that respondent's continued references to the dismissed bribery counts despite the judge's admonitions were contemptuous. Specifically, the court told counsel, "please do not make further comments to the jury as to why [the bribery counts] were disposed of." In no less than four subsequent discussions respondent again referred to those dismissed counts. Respondent's claim that his relentless pursuit of this topic was merely an attempt to argue the same point to the jury in different ways in no way justifies his actions or lessens the impropriety.

Respondent's comment before the district committee that "it is obvious, from the way the summation was going, that he [the trial judge] would stop me at the drop of a hat," (2T29–10 to 12), appears to imply that the judge was being less than

impartial and that respondent was being victimized by the judge. *See In re Yengo*, 92 *N.J.* 9, 12 (1983). His continued remonstrations that his comments were fair and ethical underscore respondent's inability to comprehend the nature of his actions and his unrepentance. He has presented no evidence that could exculpate his conduct. *See Ibid.* at 9–10. As a seasoned trial attorney who had practiced for 16 years, he should have known better.

Nonetheless, the quantum of discipline "must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315 (1982). A closer examination of respondent's behavior reveals that his comments were all contained within a short summation to the jury at the close of a heated, four-day trial. His client was not harmed by his actions. He has had only one other ethical infraction sustained against him for an entirely unrelated matter, for which he received a private reprimand. Hence, the Board finds respondent's poor demeanor to be an isolated incident during a hotly contested criminal trial. Although discourteous and degrading to the trial court, respondent is not guilty of venality or gross professional neglect. *In re Yengo, supra*, 92 *N.J.* at 13.

Accordingly, a five member majority of the Board recommends respondent be publicly reprimanded. *See Matter of Stanley*, 102 *N.J.* 244, 254 (1986) (respondent was retired from the practice of law, had no prior ethical infractions and had not caused harm to his client; therefore, he was publicly reprimanded); *In re Vincenti*, 92 *N.J.* 591, 604 (1983) (respondent's behavior warranted a one-year suspension in view of the complete lack of mitigation); *In re Yengo, supra*, 92 *N.J.* at 13 (the "undeniable mitigating circumstances" of age, failing health, his wife's precarious health and his almost immediate withdrawal from the practice of law warranted a public reprimand). *See also In re McAlevy*, 94 *N.J.* 201, 208–209 (1983) (respondent's intentional violations of court rules and pattern of discourteous behavior, which previously resulted in a severe public repri-

mand, resulted in a three-month suspension, when he persisted with similar behavior in yet other later cases).

A three member minority, however, believes respondent's conduct on a single day during one summation does not rise to the level of egregious conduct for which discipline in the form of a public reprimand is warranted. *See Matter of Stanley, supra,* 102 *N.J.* at 254 (during several days of trial before the court, respondent used unacceptable language, made constant interruptions, was extremely arrogant, and made several retorts to rulings; he was publicly reprimanded); *In re McAlevy,* 69 *N.J.* 349, 350–352 (1976) (respondent was severely reprimanded for his intemperate and insulting comments during a side bar conference and for his outrageous physical attack on opposing counsel in the judge's chambers, which resulted in a melee that required intervention by four other men before the two combatants could be separated); *In re Yengo, supra,* 92 *N.J.* at 10–11 (respondent deliberately absented himself from a criminal trial because of a nonemergent business and pleasure trip without prior notice to or approval from the trial court; he was publicly reprimanded). Accordingly, the minority would recommend imposition of a private reprimand.

The Board further recommends respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.