## IN THE MATTER OF DENNIS D. S. McALEVY, AN ATTORNEY AT LAW.

Argued January 27, 1976—Decided February 24, 1976.

*Mr. Robert E. Cowen* argued the cause for the Central Ethics Committee.

*Mr. Joseph A. Hayden, Jr.* argued the cause for respondent (*Messrs. DeCotiis, Nully and Hayden,* attorneys).

PER CURIAM. This disciplinary proceeding involves the conduct of an attorney during the trial of a criminal matter in Hudson County. Respondent was counsel for the defendant, a Jersey City police officer who had been charged with official misconduct. The State's case was presented by a Deputy Attorney General. Two incidents occurred during

the trial which form the basis of the charge against respondent.

The first incident involved a side bar conference between the trial judge and both counsel. The conference took place in the presence of the jury but out of its hearing. During the discussion the Deputy Attorney General told respondent to keep his voice down, presumably because of the jury's presence. Respondent's answer was a threat of physical violence to the Deputy Attorney General couched in vulgar terms. In turn, the Deputy Attorney General answered by suggesting a meeting place presumably where respondent would be given the opportunity to carry out his threat. The trial judge was "certain" that the raised voices at side bar were heard by the jury.

The second incident occurred the following day just prior to the resumption of trial. The judge had donned his robe and was about to go on the bench when he received and granted a request for a conference in chambers. Both attorneys were present together with the judge, who was robed, and the judge's law clerk.

Counsel began to argue about the scope of a sequestration order and the exclusion of certain persons from the courtroom. During the argument the Deputy Attorney General said that respondent was "a big mouth." He also mentioned the word "garbage" but there is some question whether he said respondent was "garbage" or that respondent's comments were "a lot of garbage."

Whatever the remarks were, they caused respondent to fly into a rage. He sprang from his chair screaming, grabbed opposing counsel by the throat and began to choke him. The judge and the law clerk tried to separate the two men who were now locked in combat, and at one point all four persons — the judge, his law clerk and the two attorneys — were rolling on the floor. The judge suffered minor injuries before the two combatants could be separated. There is some indication that the sound of the melee was audible to those in the courtroom. As a result of the foregoing, the

judge *sua sponte* declared a mistrial and barred both attorneys from further participation in the case.

The conduct of both attorneys was reported to this Court which referred the matter to Hon. Charles S. Joelson for hearing. We have his findings which are summarized in the factual presentation heretofore set forth.

As to the first incident involving the side bar conference, Judge Joelson concluded that the fact that the Deputy Attorney General had told respondent to keep his voice down did not warrant nor excuse the "bully-boy threat" made by respondent in a courtroom during a trial. He also concluded that there were extenuating circumstances for the Deputy Attorney General's response since it was "triggered" by respondent's threat of violence.

With reference to the second incident in chambers, Judge Joelson concluded that respondent's physical attack on opposing counsel could in no way be justified. Judge Joelson characterized the Deputy Attorney General's comments in chambers as "undignified and improper," but concluded that they fell far short of respondent's assault as far as the need for disciplinary action was involved, and that most likely there would have been no need for disciplinary hearing as to such comments were it not for respondent's attack. Based on the foregoing, we issued an order to show cause why respondent should not be disciplined.

At the hearing before us counsel for respondent conceded that his client's courtroom remarks and conduct in chambers were inexcusable. While not attempting to justify what was said and done, it was suggested that there was some provocation which might be considered a mitigating circumstance. We have counsel's assurance that respondent will never engage in another such altercation.

There is no question but that respondent is guilty of a serious violation of our Code of Professional Responsibility. DR7–106(C)(6). The whole concept of the rule of law is bottomed on respect for the law and the courts and judges who administer it. Attorneys who practice law and appear

in the courts are officers of the court. An attorney who exhibits the lack of civility, good manners and common courtesy here displayed tarnishes the entire image of what the bar stands for.

We consider the matter of discipline. Respondent was admitted to the bar ten years ago and has no previous disciplinary involvement. He has regretted his conduct and apologized to the trial judge who, in accepting his apology, stated that respondent was a fine young man and a talented attorney. We have respondent's assurance that he will never again engage in another such altercation. However, we wish to make it perfectly clear that any future involvement in a similar episode will be a basis for more drastic disciplinary action than is imposed herewith. Respondent is hereby severely reprimanded for his conduct in question.

*For reprimand*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.