**IN RE: TUTU WELLS CONTAMINATION LITIGATION**
**RHODA J. HARTHMAN, et al., Plaintiffs**

**v.**

**TEXACO, INC., et al., Defendants**
**ESSO STANDARD OIL, S.A., LTD., et al., Third-Party Plaintiffs**

**v.**

**LAGA INDUSTRIES, LTD., et al., Third-Party Defendants**
**FOUR WINDS PARTNERSHIP, Plaintiff**

**v.**

**TEXACO CARIBBEAN, INC., et al., Defendants**
**ESSO STANDARD OIL, S.A., LTD., Counter-claimant and**
**Third-Party Plaintiff**

**v.**

**LAGA INDUSTRIES, LTD., et al., Third-Party Defendants**

Master Docket File No. 1989-107

Civil No. 89-220, Civil No. 89-224

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 12, 1994

175

JOHN K. DEMA, ESQ., and CAREY-ANNE MOODY, ESQ., LAW OFFICES OF JOHN
K. DEMA, P.C., Christiansted, St. Croix, V.I., *for Four Winds Plaza
Partnership*

VINCENT COLIANNI, ESQ., and WARREN B. COLE, ESQ., (HUNTER, COLIANNI,
COLE & TURNER), Christriansted, St. Croix, V.I.

BROTMAN, *Judge*

IN RE: MATTER OF ABUSIVE CONDUCT OF WARREN B. COLE
MEMORANDUM AND ORDER

In its satellite motion for sanctions, an order of contempt and dismissal of counter claims, the law firm of John K. Dema, P.C., Counsel for Plaintiff Four Winds Plaza asserts that then local Counsel for Esso, Bruce Cole, Esq. ("Cole") engaged in offensive, discourteous conduct, prejudicial and degrading to the profession and the tribunal. The other issues raised in this motion will be determined separately. They concern the alleged willful failure of Cole's clients and other counsel to obey an Order of the Magistrate Judge and as such constitutes a contempt committed before the Magistrate Judge. That issue is governed procedurally by 28 U.S.C. § 636 which requires that the Magistrate Judge make factual findings on the issue of contempt and the imposition of sanctions.

The sanction request addressed in this Memorandum is based on three separate incidents: one is linked to the Tutu Water Wells Contamination litigation; the second involves communications during discovery in another action; and the third is an out of court but disparaging, condescending and gratuitous letter communicated to all counsel involved in the Tutu Water Wells Contamination Litigation.

## I. THE OFFENSIVE LANGUAGE AND CONDUCT

Carey-Anne Moody, Esq., assistant counsel to John Dema, counsel for Plaintiff Four Winds, the target of Cole's alleged unprofessional, abusive and unsavory conduct asserts the following:

First, on July 24, 1992, during a status conference before the Magistrate Judge, Cole, "made an obscene gesture, pantomiming masturbation," in full view of the majority of counsel present, while Ms. Moody was making a presentation on behalf of her client Four Winds. This allegation is supported by affidavits of other counsel present at that status conference. At the hearing held on this matter, the court heard testimony and received affidavits from other counsel present at the conference who testified to observing Cole make the alleged gesture. Cole does not deny making this gesture.

Second, Ms. Moody submits the following response by Cole in an unrelated case sent by facsimile to the offices of Four Winds' counsel regarding the whereabouts of a witness. The signed handwritten response was:

> Sure. Just give me the addresses of [Andreas] Gaul and [Paul] Lazare (third-party defendants in the Tutu litigation) without any more *Fucking* around.
> s/Bruce Cole

Cole does not, and cannot, dispute that he made the communication.

Finally, Ms. Moody submits a letter from Attorney Cole to counsel for Four Winds, copied to all counsel of record in the Tutu litigation which reads:

> Dear Ms. Moody: I understand that you will be shortly leaving the Virgin Islands and devoting your energies to some en-

deavor other than the practice of law. Your thoughtfulness and kind consideration in this regard is greatly appreciated.
s/Warren B. Cole

WBC: mje
cc: All counsel of record.

Again, there is no dispute that Attorney Cole made this communication.

## II. DISCUSSION

It requires little consideration to determine that Attorney Cole's conduct in the reported incidence demonstrates a "lack of civility, good manners and common courtesy [that] tarnishes the image of the legal profession." See Matter of McAlevy, 69 N.J. 349, 354 A.2d 289, 291 (1976). The conduct, here, undermines principles of our adversarial system so basic that they are embodied in the Preamble to the Code of Professional Responsibility, adopted by this bar and court:

> The continued existence of a free and democratic society depends upon the recognition of the concept that *justice is based upon the rule of law grounded in respect for the dignity of the individual* . . . Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection.

This principle is reemphasized by certain Ethical Considerations ("EC") that govern the conduct of officers of this court.

EC 7-37 In adversary proceedings clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer in his conduct, attitude, and demeanor towards opposing counsel. A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.
EC 7-38 A lawyer should be courteous to opposing counsel and should accede to reasonable requests . . . which do not preju-

dice the rights of his client. He should follow local customs of courtesy or practice, . . .

■ The evidence is more than sufficient to support a finding of misconduct by Attorney Cole. The conduct evidenced in these three incidents calculated as it was to disrupt, distract or unsettle an adversary, has the potential to do more harm than impair the effectiveness of the adversary. "Dignity, decorum, and respect are essential ingredients in the proper conduct in a courtroom, and therefore in the proper administration of justice." Attorney Grievance Commission of Maryland v. Allison, 317 Md. 523, 536, 565 A.2d 660, 666 (1989). Such conduct, as engaged in by Cole, undermines the effectiveness of our adversary system which depends on the effectiveness of the participants. In a similar context, one court observed "[t]here cannot be genuine respect of the adversary system without respect for the adversary, and disrespect for the adversary system bespeaks disrespect for the court and the proper administration of justice." See In the Matter of Lester T. Vincenti, 114 N.J. 275, 554 A.2d 470, 473 (1989).

Though the court's findings turn principally on the breach of clearly defined ethical standards, it is deeply concerned that these incidents are rooted in "unlawful discrimination." As recently amended, the Code of Professional Responsibility expressly forbids an attorney "[u]nlawfully to discriminate in the practice of law." References to a female attorney as "little girl" and "young lady" have been described as "'demeaning and undignified' and of an 'offensive nature,'" and have resulted in public censure of both judges and attorneys. See Principe v. Assay Ptrns., 586 N.Y.S.2d 182, 184 (1992) (collecting cases). The conduct of "pantomiming masturbation," in the sanctum of a courtroom, though clearly inappropriate and overtly sexual, is arguably not sexist of it self. However, the fact that it was directed to a female attorney raises the specter of gender bias and sexist animus. Without finding, based on the evidence admitted, that Cole was motivated by sexist animus, the court would be remiss in ignoring the subject altogether.

■ This court will not tolerate or condone bias of any kind. By this motion, both the firm, the Law Office of John K. Dema, P.C., and the client, Four Winds Plaza Association, registered their

objection to the discourteous and abusive treatment to which their associate and attorney was subjected. Movant and affiants have had the courage and integrity to expose to public scrutiny these incidents. The court recognizes the seriousness of this motion, and commends movants and affiants for coming forward and not giving the appearance of condoning such conduct by their silence. Indeed, under the ethical standards stated above, movants, in making this motion, are asking the court to give force to a basic professional tenet that the "rule of law is grounded in respect for the dignity of the individual." See Preamble to the Code of Professional Responsibility. In all matters, attorneys are and should be held to the highest ethical standards. An attorney need not act in a manner that is legally cognizable as discrimination to breach the standard of ethics to which he is held, and bring dishonor to himself and the profession.

It is clear that Cole has violated a lawyer's duty to treat with consideration all persons involved in the legal process and to avoid the needless infliction of harm. This duty is as important as and concurrent with the duty to represent the client with zeal within the bounds of the law. See EC 7-10. Cole's conduct was demeaning, abusive and antithetical to the proper administration of justice, and cannot be countenanced. The court notes that this display of harassing and abusive conduct was not compelled by ill feeling per se, that may or may not have existed between the clients in this litigation. The spate of offensive behavior was gratuitous; and engaged in primarily to harass and maliciously injure Ms. Moody. However, this court need not decide whether the conduct and remarks were borne out of "misogy[ny] or [from some] other maladapted point of view," or stemmed merely from a tactical desire to make opposing counsel uncomfortable. See Principe, 586 N.Y.S.2d at 186. One need not be of a particular gender to find Cole's conduct to be demeaning, abusive and antithetical to the proper administration of justice, and as undertaken in bad-faith. This court agrees with the observation that "vilification, intimidation, abuse and threats have no place in the legal arsenal." In Re Vincent, 554 A.2d at 473, citing in Re Mezzacca, 67 N. J. 387, 389-90 (1975).

As adverted to earlier, there is no contention of the client's involvement in these three incidents. As such, sanctions will be

assessed only against the attorney. As to the law firm with which Attorney Cole is associated, in the Rule 11 context the Supreme Court has held that sanctions may not be imposed against the attorney's law firm vicariously and should be imposed only against the involved attorney. See Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120 (1989).

The court has satisfied the procedural due process requirement of reasonable notice and opportunity for a hearing on the record. See Roadway Express v. Piper, 447 U.S. 752 (1980). At the hearing on this matter, Cole could offer no valid justification for his behavior. Moreover, he did not and could not argue that his conduct was within accepted notions of civility between reasonable attorneys. Cole simply stated that "in mitigation, but not in justification I have to say that personal things going on in my life made me less than circumspect." Aside from this statement, to the court's knowledge, neither Mr. Cole or his law firm, has apologized to Ms. Moody, or shown any other sign of remorse or intent to act differently in the future.

■ The court finds that the misconduct here is serious, in that it concerns fundamental precepts of legal ethics. Each incident constitutes a clear violation of Disciplinary Rule 7-102(a)(1) which prohibits an attorney from taking any action that "would serve merely to harass or maliciously injure another." Moreover, as the court has shown, the conduct in question constitutes violations of at least three other ethical duties imposed on members of this profession. More disturbing, it appears that Mr. Cole has failed to appreciate the seriousness of these ethical breaches.

### III. SANCTIONS

■ Absent specific rules the court has inherent power to sanction parties before it for misconduct. See Chambers v. Nasco, Inc., 111 S.Ct. 2123, 2132 (1991) (reasserting that "'Courts of justice are universally acknowledged to be vested, by their creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.')'" (citation omitted). As such "it firmly established that '[t]he power to punish for contempt is inherent in all courts.'" Chambers v. Nasco, 111 S.Ct. at 2132, quoting Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874).

181

"This power reaches both conduct before the court and that beyond the court confines." Chambers v. Nasco, 111 S.Ct. at 2132.

■ ■ When fashioning an appropriate discipline for misconduct, courts are to bear in mind that sanctions serve a dual purpose, and are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976). A court may legitimately consider some subsequent conduct in mitigation of the severity of the sanctions to be imposed. In this case, some sign of contrition for the regrettable incidents by way of a suitable letter of apology to Ms. Moody, would have been a legitimate mitigating consideration. To the contrary, Mr. Cole has demonstrated a determined failure to recognize the seriousness of the misconduct in question. Therefore, consistent with the twin objectives of sanctions as recognized by the Supreme Court, this court believes that a sanction of a month's suspension from the practice of law is appropriate in this case, and such suspension shall commence in seven days from the date of this Memorandum and Order. In addition, the court determines that all costs of processing this motion, including the appearances at the hearing shall be taxed against Respondent. In addition, Respondent shall convey a written apology to Movant and Ms. Moody, and shall perform up to 200 hours of community service for a period of one year from this date, as may be requested from time to time by the coordinator of the Third Circuit Task Force on Equal Treatment in the Courts.

## ORDER

For reasons stated in the court's Memorandum Opinion of even date, it is hereby

ORDERED THAT Warren B. Cole, Esq., of the law firm of Hunter, Colianni, Turner & Cole, is suspended from the practice of law in the Virgin Islands, for the period of one (1) month, to commence seven days from the filing date of this Order; and

IT IS FURTHER ORDERED THAT all attorney's fees and costs incurred by Movants in bringing this matter shall be assessed

182

against Warren B. Cole, Esq., (counsel are to file affidavits as to such fees and costs within three weeks from date of filing of this opinion and order); and

IT IS FURTHER ORDERED THAT respondent shall convey a written apology to Movant and Ms. Moody, and shall perform up to 200 hours of community service for a period of one year from this date, as may be requested from time to time by the coordinator of the Third Circuit Task Force on Equal Treatment in the Courts.

SO ORDERED.