**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-20

PAUL W. BENSON,

     Plaintiff-Respondent,

v.

MARIA L. BENSON,

     Defendant-Appellant.

_____

Argued May 18, 2022 – Decided July 11, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2458-17.

Andrew M. Shaw argued the cause for appellant (Shaw Divorce & Family Law LLC, attorneys; Andrew M. Shaw, on the briefs).

Timothy J. Foley argued the cause for respondent (Foley & Foley, attorneys; Timothy J. Foley and Christopher T. Karounos, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial action, defendant Maria L. Benson appeals from the denial of her cross-motion to compel the recusal of plaintiff's counsel. Because defendant waived the right to object to plaintiff's counsel's representation in post-judgment matters related to enforcement of the judgment of divorce and did not demonstrate any new basis to disqualify counsel, we reject her arguments and affirm.

I.

The following facts are gleaned from the record, focusing on the facts pertaining to the issue of the disqualification of plaintiff's counsel, the sole issue raised on appeal.

The parties were married in 1995. Plaintiff Paul W. Benson filed a complaint for divorce in 2017. During this contentious litigation, plaintiff has been represented by the same lawyer, Christopher T. Karounos. Defendant made several attempts to disqualify him based on a purported conflict. Those efforts were either denied by the trial court or withdrawn by defendant.

After several trial days, the parties reached a final comprehensive settlement regarding all issues except custody.[1] Both parties were represented

_____

[1] In a February 6, 2020 order, the trial judge awarded temporary legal and physical custody of the parties' fifteen-year-old son to plaintiff and designated plaintiff as the parent of primary residence.

by counsel when the terms of the settlement were placed on the record on February 5, 2020. The parties had an extensive discussion about the disqualification issue on the record. In that discussion, defense counsel expressly acknowledged defendant was waiving her right to appeal the disqualification-motion orders.

> [DEFENSE COUNSEL]: Okay. Because this is a global financial settlement as it relates to equitable distribution and all other financial issues, both parties are waiving their right to appeal any of the issues, including any pretrial motions relating to disqualification [of counsel] or the like.
>
> . . . .
>
> [DEFENSE COUNSEL]: It doesn't in any way prevent anybody to take any action with regard to any collateral actions, but that as it relates to the appeal in the Appellate Division, those issues are waived.
>
> THE COURT: In other words, this is over once we settle it, nobody can go to appeal and say, well it's not really a settlement because somebody had a conflict. Do you understand that, Ms. Benson?
>
> [DEFENDANT]: Yes, Your Honor.
>
> THE COURT: And you understand that?
>
> [PLAINTIFF]: Yes, sir.
>
> THE COURT: Okay. Go ahead.

[PLAINTIFF'S COUNSEL]: And Your Honor, just to clarify that language. And again, all other rights are preserved. It's not only the appeal, any arguments regarding conflict as to, from March 10th 2018 --

THE COURT: Entering into the agreement.

[PLAINTIFF'S COUNSEL]: -- through today.

THE COURT: For litigation purposes.

[PLAINTIFF'S COUNSEL]: For the purposes of litigation, trial.

THE COURT: Not for any other collateral purposes.

[PLAINTIFF'S COUNSEL]: Correct.

THE COURT: Any other venues, but to say that there was a conflict here in this litigation for appeal, for appeal purposes.

[DEFENSE COUNSEL]: That's it, limited --

[PLAINTIFF'S COUNSEL]: And for the purposes of right now me representing Mr. Benson, I am here as a nonconflicted attorney appearing for this.

THE COURT: Well, but the only place to go is appeal, you can't --

[DEFENSE COUNSEL]: Right.

[PLAINTIFF'S COUNSEL]: And the validity of this agreement.

THE COURT: The agreement is valid.

4

[PLAINTIFF'S COUNSEL]:  Okay.

[DEFENSE COUNSEL]:  What we're doing right --

THE COURT:  For litigation purposes, it's valid.

[DEFENSE COUNSEL]:  The actions we are taking today are in an effort to resolve the case, both parties are entering into an arm's length transaction.

THE COURT:  Right.

[PLAINTIFF'S COUNSEL]:  That's --

[DEFENSE COUNSEL]:  With counsel.  If down the road there is a reason for my client, in another venue, subject to another issue, even if it's a court, not an appellate court, she has the right to assert any claims or defenses she may have in a court.  It doesn't mean that [plaintiff's counsel] if for something, there's an intervening event that she has an objection to, she can raise it.

THE COURT:  Yes, but that will not in any way void or affect the judgment of divorce.

[DEFENSE COUNSEL]:  That's our understanding as well.

THE COURT:  With the terms and conditions that we're entering into.

[DEFENSE COUNSEL]:  Correct, Judge.

THE COURT:  That's the, as between [the parties], all things are resolved today, let's put it that way.

[DEFENSE COUNSEL]:  Correct, Judge.

5

THE COURT:  Maybe that's the best way to put it.

[PLAINTIFF'S COUNSEL]:  Correct. That's fine, Judge.

THE COURT:  Okay.

[PLAINTIFF'S COUNSEL]:  And just to make it clear, any post judgment of divorce actions, relating to this, there is no disqualification.

THE COURT:  Well, that -- what do you mean there's no disqualification?

[PLAINTIFF'S COUNSEL]:  If there's a motion based on whatever is put on the record here today, there's no disqualification, it's gone.

THE COURT:  Yes, I am not precluding anybody, in a post judgment motion, to file a motion to disqualify somebody in that post judgment motion.

[DEFENSE COUNSEL]:  That's what I'm saying, Judge.

[PLAINTIFF'S COUNSEL]:  Well --

[DEFENSE COUNSEL]:  You can deny it, but --

THE COURT:  Or I could grant it.  Or so another [j]udge --

[DEFENSE COUNSEL]:  I don't think we can prevent someone from making --

THE COURT:  -- in the future.

A-0481-20

[DEFENSE COUNSEL]: -- such an application.

THE COURT: For in the future, for a post judgment motion on one of these things, somebody could say -- and there could be other reasons for conflicts.

[DEFENSE COUNSEL]: Correct.

THE COURT: But it's not grounds to invalidate the agreement --

[DEFENSE COUNSEL]: This agreement.

THE COURT: -- as of today.

[PLAINTIFF'S COUNSEL]: Understood. My understanding Your Honor, was that the issue of conflict for the purposes of the divorce, is gone. Nothing therein affects [defendant's] rights as to any ethics issues or other types of entities, but as far as the divorce and my representation of [plaintiff] --

THE COURT: Up to today.

[PLAINTIFF'S COUNSEL]: It was my understanding for the divorce.

THE COURT: And appeal.

[PLAINTIFF'S COUNSEL]: For appeal. If there's post judgment motions, I'm still his lawyer.

THE COURT: Well he don't -- maybe -- she can make an application.

[DEFENSE COUNSEL]: She has to have the right.

7

THE COURT: Going forward there might be, she always has that right.

[PLAINTIFF'S COUNSEL]: Okay.

THE COURT: If there's any post judgment motion.

After a series of questions by her counsel, defendant confirmed she believed the settlement was "a fair and reasonable outcome under all of the circumstances." The following exchange took place after defense counsel completed his questioning of defendant:

> [PLAINTIFF'S COUNSEL]: And Mrs. Benson, for the purposes only of the trial through this moment right now, and appeal purposes, between March 10, 2018 and today, you heard the terms, you agree for these purposes only, there is no conflict, we can put the settlement through as we have just done, with me representing Mr. Benson, correct?
>
> THE COURT: No, don't turn, this is to you -- do you understand that?
>
> [DEFENDANT]: I didn't know he was going to start talking again after --
>
> THE COURT: Do you have a problem with that question?
>
> [DEFENDANT]: Say it again, can you repeat that.
>
> THE COURT: All right, let me say it. Do you understand that between the agreement and today, all that time, and everything that went on, at least for purposes of appeal and litigation, that Mr. Karounos

8

has no conflict, that you can't allege on appeal that whatever happened all along and today --

[DEFENDANT]: And today.

THE COURT: And today, not just for today, but everything that went along in this litigation.

[DEFENDANT]: Yes, Your Honor.

THE COURT: For purposes of appeal.

[DEFENDANT]: Yes.

THE COURT: You understand that.

[DEFENDANT]: Not including post judgment.

THE COURT: Not including post judgment, just for today.

[DEFENDANT]: Yes.

THE COURT: You understand that.

[DEFENDANT]: Yes.

THE COURT: Okay.

[PLAINTIFF'S COUNSEL]: And lastly you understand that I will still be drafting and interacting with your attorney until the [c]ourt --

THE COURT: Well --

[PLAINTIFF'S COUNSEL]: I have to put in an order in Judge.

THE COURT:  No, when post judgment --

[PLAINTIFF'S COUNSEL]:  Until the actual entry of the judgment of divorce and everything is finalized, I will still be acting as Mr. Benson's attorney, you understand that.

[DEFENDANT]:  Yes.

[PLAINTIFF'S COUNSEL]:  Without conflict, for this purpose.

[DEFENDANT]:  Yes.

Defense counsel did not object to any of those questions.

The judge issued a judgment of divorce on February 5, 2020, apparently intending to issue an amended judgment with a copy of the February 5, 2020 transcript attached.[2]  In a February 20, 2020 letter to counsel, the judge stated the court could not accept "the transcript as an attachment to an [a]mended [j]udgment of [d]ivorce to establish the terms of the agreement" and directed plaintiff's counsel to file under the five-day rule, R. 4:42-1(c), an amended judgment of divorce, "itemizing the terms and conditions of the agreement as testified to on the record and memorialized in the transcript."  On March 20, 2020, the trial judge heard oral argument regarding the proposed form of the

---

[2]  The record does not include a copy of the February 5, 2020 judgment.

amended judgment and issued the amended dual judgment of divorce (AJOD) on March 23, 2020.[3] The AJOD states, in relevant part:

> Both parties are waiving their right to appeal any of the issues in the entire divorce, from inception through entry of the JOD and the within Amended JOD, including any pretrial or trial motions relating to the disqualification of Plaintiff's counsel, or the like but defendant does not waive the right to bring administrative or ethics claims, or object to plaintiff's counsel's representation in any post judgment matter unrelated to enforcement of the Judgment of Divorce or Agreement memorialized on the record on February 5, 2020.

Plaintiff moved for reconsideration of the AJOD, and defendant cross-moved for various relief, including relieving plaintiff's counsel.[4] In a June 29, 2020 order, the trial judge granted in part and denied in part the motion and cross-motion, specifically denying the aspect of defendant's cross-motion concerning plaintiff's counsel: "This issue was addressed . . . during extensive pretrial proceedings, motions, and case management conferences and was addressed by the court at the trial. Any issues regarding plaintiff's counsel

---

[3] The record does not include a transcript of the March 20, 2020 argument or any documents the parties may have submitted under the five-day rule regarding the proposed form of order.

[4] The record does not include copies of the parties' submissions or a transcript of any subsequent oral argument.

A-0481-20

pertaining to this litigation are concluded at the trial level." Defendant did not appeal the AJOD or the June 29, 2020 order.

On July 18, 2020, plaintiff moved to enforce litigant's rights, compel compliance with certain provisions of the AJOD, and for fees. Defendant cross-moved for, among other things, entry of an

> [o]rder compelling the [p]laintiff's attorney to recuse himself based upon his clearly inappropriate conduct relative to his preparation and filing of pro se papers on behalf of his client in the State of Florida, and, thereafter, his attempt to force service of process of those pro se pleadings, through the use of his law offices, upon [d]efendant's attorney in New Jersey, and his admitted photographing of [d]efendant's attorney's law offices.

In her notice of cross-motion, defendant did not make any other reference to recusing plaintiff's counsel or state any other reason or basis for his recusal. In one sentence in her twelve-page certification in support of her cross-motion, defendant describes plaintiff's counsel as "[p]laintiff's best friend, and his long-standing attorney, who was my attorney personally and the attorney of the business for which I was principal for years . . . ." In her certification, defendant recounted how in response to a request defendant had made through her counsel for a visit with the parties' minor son, plaintiff's counsel stated the following in an August 4, 2020 email on which the parties' reunification therapist was copied:

12

> Even though [the minor son's b]irthday has been August 4th for the past 17 years it appears your client only recalled same earlier today. What that says about her as [the minor son's] biological mother (clearly referring to her as his mom would not be appropriate at this time) is better left to [the parties' therapists] to determine.

Defendant asserted plaintiff's counsel's description of her "as a mother [wa]s . . . outrageous."

In defense counsel's certification in support of the cross-motion, he stated plaintiff's counsel had "demonstrated a complete disregard of basic [c]ourt [r]ules, appropriate decorum, and decency as it relates to his submissions to the [c]ourt" and "[h]e has also demonstrated a predisposition to blur the line between himself and his client to the point that he can no longer be designated the attorney of record in this matter." At oral argument, defense counsel elaborated, accusing plaintiff's counsel of using "deceptive" motion practice techniques, such as using extremely small font and single spaces to add more pages to his motions and certifications. Defense counsel asserted plaintiff's counsel had "engag[ed] in invasive and outrageous activity at [his] offices, taking photographs, performing surveillance, and who knows what else" when he attempted on August 7, 2020, to serve defendant through defense counsel with a pro se application plaintiff had filed in Florida. Defendant's counsel also

13

contended plaintiff's counsel had prepared the pro se application on behalf of plaintiff in the Florida lawsuit.

In opposition to defendant's cross-motion, plaintiff's counsel described the photographs of defense counsel's office doors as "an example of a mainstream process server's open advertisement of how they use video confirmation for when service is actually attempted."  Plaintiff's counsel denied attempting to serve the Florida documents on defendant through her counsel and indicated that copies of the documents were simply forwarded to defense counsel.  Defendant apparently had filed in Florida an application seeking a temporary restraining order against plaintiff and temporary custody of the parties' minor son, contrary to the February 6, 2020 custody order.  The Florida court subsequently dismissed her application.  Her counsel acknowledged it was a "mistake" to seek custody of the parties' minor son in Florida.  The trial judge called her Florida application "frivolous."

After hearing oral argument, the trial judge denied the aspect of defendant's cross-motion seeking to compel the recusal of plaintiff's counsel:

> [D]efendant's application to the [c]ourt to order plaintiff's counsel to recuse himself is denied.  I know there's vitriol between the parties, between counsel, among each other.  It's still denied.  You can go to the Appellate Division, you could go to . . . other forums should people want to go.  I had advise[d] counsel, they

> are aware there are other forums to go, but I'm not going to recuse [plaintiff's counsel] now or in the future, hopefully there is no future in this case.

On September 3, 2020, the trial judge issued an order in which he, among other things, denied the aspect of defendant's motion seeking an order compelling plaintiff's counsel to recuse himself.

On appeal, defendant argues the trial judge erred in denying the recusal aspect of her motion because plaintiff's counsel (1) previously had represented defendant in "matters substantially related to the underlying divorce proceedings" and (2) had violated Rules of Professional Conduct 3.2 and 3.4(a). Defendant asks us to remand the case and require it be assigned to a different judge. In response, plaintiff argues defendant failed to raise the conflict issue in her cross-motion, the conflict issue was adjudicated in the AJOD, and his counsel's zealous advocacy did not warrant the extreme sanction of disqualification. In reply, defendant denies she waived the right to seek disqualification of plaintiff's counsel in post-judgment proceedings and argues plaintiff's counsel "both prejudgment and post-judgment . . . acted in a matter that violates both the courtesy and fairness requirements under the Rules of Professional Conduct."

## II.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  We reverse "only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  We review de novo questions of law.  Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).  For example, the "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review."  Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div.) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)), certif. denied, 248 N.J. 235 (2021).

Settlement of matrimonial disputes is "encouraged and highly valued in our system."  Quinn v. Quinn, 225 N.J. 34, 44 (2016).  Settlement agreements, including settlement agreements in matrimonial actions, are governed by basic

16

contract principles and, as such, courts should discern and implement the parties' intent. J.B. v. W.B., 215 N.J. 305, 326 (2013). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Quinn, 225 N.J. at 45. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid.

The parties placed the terms of their settlement agreement on the record on February 5, 2020. Those terms were memorialized in the AJOD. Neither party appealed that judgment or the June 29, 2020 order regarding plaintiff's motion for reconsideration and defendant's cross-motion for various relief. The language of the AJOD is unambiguous.

> Both parties are <u>waiving their right to appeal</u> any of the issues in the entire divorce, from inception through entry of the JOD and the within Amended JOD, <u>including any pretrial or trial motions relating to the disqualification of Plaintiff's counsel</u>, or the like <u>but defendant does not waive the right to</u> bring administrative or ethics claims, or <u>object to plaintiff's counsel's representation in any post judgment matter</u>

> unrelated to enforcement of the Judgment of Divorce or Agreement memorialized on the record on February 5, 2020.
>
> [(Emphasis added).]

Thus, pursuant to the AJOD, defendant was barred from raising a disqualification argument except in "any post judgment matter unrelated to the enforcement of the Judgment of Divorce or Agreement . . . ."

The post-judgment matter in response to which defendant filed the cross-motion seeking an order to compel plaintiff's counsel's recusal was plaintiff's motion directly related to the enforcement of the AJOD. The trial court properly denied the disqualification aspect of defendant's cross-motion based on the clear language of the AJOD.

Relying on isolated quotes from the February 5, 2020 transcript, defendant attempts to argue the AJOD does not reflect the parties' agreement. The way to object to the language of a judgment is to appeal the judgment – something neither party did. Defendant can't make an end run around her failure to appeal the AJOD by belatedly arguing now it does not reflect the parties' agreement.

Moreover, reviewing the transcript of the February 5, 2020 proceeding in its entirety, we are convinced the terms of the AJOD match the parties' agreement regarding defendant's disqualification argument. It is clear the

parties intended that the judgment or any effort to enforce it could not be attacked by a renewed effort by defendant to raise again her previously-rejected disqualification argument. As defense counsel stated on the record:

> Because this is a global financial settlement . . . , both parties are waiving their right to appeal any of the issues, including any pretrial motions relating to disqualification or the like.
>
> . . . .
>
> It doesn't in any way prevent anybody to take any action with regard to any collateral actions, but that as it relates to the appeal in the Appellate Division, those issues are waived.
>
> . . . .
>
> The actions we are taking today are in an effort to resolve the case.
>
> . . . .
>
> If down the road there is reason for my client, in another venue, subject to another issue, even if it's a court, not an appellate court, she has the right to assert any claims or defenses she may have in a court.

Plaintiff's motion was not a "collateral action[]," "in another venue, subject to another issue." It was a motion to enforce the AJOD. Defendant raised again her disqualification argument in a cross-motion, trying to defeat plaintiff's motion to enforce the AJOD. Both on the record and as memorialized in the

AJOD, defendant clearly waived the ability to renew that argument in an effort to defeat a motion to enforce the judgment.

In addition to her previously-made conflict argument, defendant raised a purportedly new basis for plaintiff's counsel's disqualification, alleged violations of Rules of Professional Conduct 3.2 and 3.4(a), based on events that occurred after the AJOD was issued. Specifically, defendant faulted plaintiff's counsel for the April 4, 2020 email in which he referred to defendant as a "biological mother" and for allegedly attempting to serve papers from the Florida action on defense counsel.

In considering defendant's argument, we are mindful "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly." Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022) (quoting Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000)). "In determining whether to disqualify counsel, the court must balance 'the need to maintain the highest standards of the profession against a client's right to freely choose his [or her] counsel.'" Van Horn v. Van Horn, 415 N.J. Super. 398, 415 (App. Div. 2010) (quoting Cavallaro, 334 N.J. Super. at 572). Because the determination of whether counsel should be disqualified presents an issue of law, we review that decision

de novo. City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010); Dental Health Assocs., 471 N.J. Super. at 192.

Rule of Professional Conduct (RPC) 3.2 provides, in relevant part, "[a] lawyer . . . shall treat with courtesy and consideration all persons involved in the legal process." Our Supreme Court has stated "[t]he concept of professionalism embodied in RPC 3.2 lies at the core of what it means to be a good lawyer." Baxt v. Liloia, 155 N.J. 190, 203 (1998). "Vilification, intimidation, abuse and threats have no place in the legal arsenal." In re Mezzacca, 67 N.J. 387, 389-90 (1975).

In In re Vincenti, an attorney violated RPC 3.2 "by clear and convincing evidence" when he "threatened opposing counsel, engaged in vulgar name-calling" before trial and "continued to engage in vulgar name-calling" of opposing counsel and opposing counsel's witnesses during trial, while also challenging both opposing counsel and one of opposing counsel's witnesses to a fight. 114 N.J. 275, 278, 281 (1989). The attorney also "used threatening, abusive, and vulgar language directed to the trial judge's law clerk" and repeatedly made "verbal attacks" that "carried invidious racial connotations." Id. at 278, 283.

A-0481-20

RPC 3.4(a) provides that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value, or counsel or assist another person to do any such act." In In re Forrest, 158 N.J. 428, 436 (1999), the Supreme Court found an attorney had violated RPC 3.4(a) by failing to disclose to his adversary that his client had died and had deliberately misled his adversary by serving discovery responses propounded on his client without disclosing his client was deceased.

The trial judge rejected defendant's new disqualification argument, acknowledging the "vitriol between the parties, between counsel, among each other." Mutual vitriol does not call for disqualification of one party's attorney. Plaintiff's counsel's alleged post-judgment bad acts – referring to defendant as a "biological mother" and serving on defense counsel papers from a Florida case his client had initiated – are not comparable to the actions of counsel in In re Vincenti, 114 N.J. at 281, or In re Forrest, 158 N.J. at 436, and do not merit the ultimate sanction of disqualification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0481-20